UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SYBIL ANN PADGETT

       Petitioner,

                         CASE NO. 04-CV-74606-DT
v.                         JUDGE NANCY G. EDMUNDS
                         MAGISTRATE JUDGE PAUL J. KOMIVES

CLARICE STOVALL,

       Respondent.
_____/


**REPORT AND RECOMMENDATION**

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      D.    *Sufficiency of the Evidence (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
           1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
           2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      E.    <u>*Miranda*</u> *Claim (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
           1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
           2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      F.    *Right to Present a Defense (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
           1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      G.    *Admission of Evidence (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
           1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
           2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      H.    *Lesser Offense Instruction (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
           1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
           2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      I.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.     *Procedural History*

1.     Petitioner Sybil Ann Padgett is a state prisoner, currently confined at the Robert Scott Correctional Facility in Plymouth, Michigan.

2.     On December 11, 2000, petitioner was convicted of first degree murder, MICH. COMP. LAWS § 750.316, and conspiracy to commit murder, MICH. COMP. LAWS § 750.157(a), following a jury trial in the Oakland County Circuit Court. On January 9, 2001 she was sentenced to a mandatory term of life imprisonment without possibility of parole on the murder conviction and to a concurrent term of parolable life in the conspiracy conviction.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.     Where the evidence was insufficient to establish beyond a reasonable doubt that Ms. Padgett was guilty of aiding and abetting first degree premeditated murder and conspiracy to commit murder, her convictions violate her state and federal constitutional rights to be free from conviction in the absence of proof beyond a reasonable doubt. Her convictions must be vacated.
>
> II.    Where Ms. Padgett did not knowingly and voluntarily waive her Miranda rights and make a statement, the trial judge violated Ms. Padgett's Fifth Amendment and state constitutional protections against self-incrimination by allowing her statement to be admitted.
>
> III.   The exclusion of Patrick Alexander's entire criminal record as evidence of bias deprived Ms. Padgett of her constitutional right to present a defense.
>
> IV.    The trial judge deprived Ms. Padgett of her constitutional right to a fair trial by allowing irrelevant, prejudicial evidence that a witness' acquaintance from jail told him that he earned his spiderweb tattoo by committing a murder.

2

> V.      Where the trial court denied the defense request for an instruction on solicitation of murder, the trial court deprived Ms. Padgett of her state and federal constitutional rights to a properly instructed jury.

The court of appeals found no merit to petitioner's claims, and affirmed her conviction and sentence. *See People v. Trapani*, No. 232331, 2003 WL 21224033 (Mich. Ct. App. May 27, 2003).

4.      Petitioner, proceeding *pro se*, sought leave to appeal these same issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Padgett*, 469 Mich. 972, 671 N.W.2d 881 (2003).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on November 17, 2004. As grounds for the writ of habeas corpus, she raises the same five claims that she raised in the state courts.

6.      Respondent filed his answer on May 25, 2005. He contends that petitioner's claims are meritless.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner was tried jointly with her codefendant, Donna Kay Trapani, in connection with a murder-for-hire scheme. Two other codefendants pleaded guilty prior to trial. The Michigan Court of Appeals briefly summarized the facts leading to petitioner's conviction:

> Defendants' conviction arise from the shooting death of Martha Gail Fulton ("the victim") who was shot as part of an alleged killing for hire scheme as she left her job as a library aide at the Orion Township Public Library. Defendant Trapani had been involved in an affair with the victim's husband, George Fulton, who was employed by Trapani in her Florida home health care business. Defendant Padgett was one of Trapani's full-time employees. The evidence at trial indicated that Trapani hired Padgett and codefendants Patrick Alexander and Kevin Ouellette to kill the victim. Padgett allegedly purchased the gun that was used in the killing and helped plan the crime.

*Trapani*, 2003 WL 21224033, at *1, slip op. at 1-2 (footnote omitted).

C.  *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

4

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citing cases); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v.*

*Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Sufficiency of the Evidence (Claim I)*

Petitioner's first claim is that the evidence was insufficient to establish the her guilt of first degree murder and conspiracy to commit murder beyond a reasonable doubt.

1.     *Clearly Established Law*

The Due Process clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)(emphasis in original).

However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. As such, the question becomes whether or not the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 552 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F.Supp 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197,

211 n.12 (1977)*; see also, Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2nd Cir. 1999). Accordingly, it is necessary to examine the elements of the crimes of first degree murder and conspiracy to commit murder under Michigan law.

In order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *See* MICH. COMP. LAWS § 750.316(a); *People v. Anderson*, 209 Mich. App. 527, 537, 531 N.W.2d 780, 786 (1995). One who procures, counsels, aids, or abets in the commission of an offense may be convicted and punished as if he committed the offense directly. *See* MICH. COMP. LAWS § 750.39; *People v. Norris*, 236 Mich. App. 411, 419, 600 N.W.2d 658 (1999). To establish that a defendant aided and abetted a crime, the prosecutor must prove that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the principal in committing the crime, and (3) the defendant intended the commission of the crime or knew the principal intended its commission at the time he gave aid or encouragement. *See id.* Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that a defendant aided or assisted in the commission of the crime. *See id* at 419-420. To prove a conspiracy to commit murder, it must be established that each of the conspirators had the intent required for murder and, to establish that intent, there must be foreknowledge of that intent. Foreknowledge and plan are compatible with the substantive crime of first-degree murder as both the crime of conspiracy and the crime of first-degree murder share elements of deliberation and premeditation. Prior planning denotes

premeditation and deliberation. *See People v. Hammond*, 187 Mich App. 105, 108, 466 N.W.2d 335, 337 (1991) (citation omitted).

    2.    *Analysis*

Regarding the first degree murder claim, petitioner argues that she did not aid or abet the crime, as Kevin Ouellette's testimony regarding her involvement was not believable. However, his testimony must be regarded as true when viewed in the light most favorable to the prosecution. *See Jackson*, 443 U.S. at 326. Ouellette testified that petitioner provided him with the gun used in the murder, that petitioner suggested he slit the tires of Gail's van, and that petitioner provided him with the mask he wore when he shot Gail. This testimony provides ample evidence to support the finding that petitioner aided and abetted the murder and therefore the Court of Appeals's application of the *Jackson* standard was not unreasonable. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 858-59(E.D. Mich. 2003) (Tarnow, J.), *aff'd* 104 Fed. Appx. 461 (6th Cir. 2004).

Petitioner's contention that there was insufficient evidence for the jury to convict her of conspiracy to commit murder is also without merit. Petitioner twice met with Donna Trapani, Kevin Ouellette and Patrick Alexander. At the second meeting, petitioner told Ouellette that the best time to kill Gail would be at 9 p.m. on Monday, as that is the time Gail left the library. Petitioner also told Ouellette that she knew where to get a gun and that she came along to Michigan because she had already been there and could provide useful information. Viewed in the light most favorable to the prosecution, this was evidence sufficient to find petitioner guilty of conspiracy to commit murder and therefore the Court of Appeals's application of the *Jackson* standard was not unreasonable. *See Cameron v. Birkett*, 348 F. Supp. 2d 825, 840 (E.D. Mich. 2004) (Gadola, J., adopting Report of Komives, M.J.).

E. *Miranda Claim (Claim II)*

Petitioner's second claim is that her Fifth Amendment rights were violated when she did not knowingly and voluntarily waive her *Miranda* rights.

1. *Clearly Established Law*

"Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily and knowingly and intelligently waives his Fifth Amendment rights." *Miranda v. Arizona*, 384 U.S. 436, 44 (1966). The *Miranda* rule is of federal constitutional dimension. *See Dickerson v. United States*, 530 U.S. 428, 438-42(2000). In determining the validity of the interrogation, the ultimate issues of whether petitioner waived her rights to remain silent and to counsel are legal determinations to be reviewed under § 2254(d)(1). *See, e.g., Thompson v. Keohane*, 516 U.S. 99, 112-13(1995) (determination of whether interrogation was a "custodial interrogation" under *Miranda* is a legal determination no subject to the presumption of correctness for state court findings of historical fact); *Brewer v. Williams*, 470 U.S. 387, 397 n.4 (1977) (same as applied to question of whether petitioner validly waived his Sixth Amendment right to counsel). However, the state courts' resolution of the underlying historical facts are presumed correct unless rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). *See generally, Townsend v. Sain*, 372 U.S. 293, 309 n.6 (1963) (factual findings entitled to a presumption of correctness under the habeas statutes are those relating to "basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators.") (internal quotation omitted).

2. *Analysis*

The following facts were determined by the Court of Appeals:

> In the video-taped interrogation, Padgett told the officers that she was thirty-eight years old. She had a GED and earned a nursing degree in junior college and

>was a licensed practical nurse. She had not been in custody prior to questioning, but she was familiar with television police shows. She was questioned for over an hour before she waived her *Miranda* rights, and the interview continued for about three hours. From our review of the record, there is no indication that Padgett's statement was not voluntarily given. The video recording of the interview establishes that Padgett was repeatedly advised of her *Miranda* rights, which were explained to her in considerable detail. The officers repeatedly informed her she was free to end the interview and free not to answer any question. They told her she was free to leave at any time and free to ask for an attorney at any time. Further, the officers repeatedly advised Padgett to take her time in deciding whether to continue the interrogation. Padgett asked the officers several questions related to the nature of her rights and the waiver provisions in the documents before her. Padgett repeatedly stated that she was participating in the interview voluntarily. She never asked for an attorney after waiving her *Miranda* rights. Additionally, she was offered food and beverage, and was not abused or threatened. Moreover, there is no allegation that she was injured, intoxicated, drugged or in ill health, deprived of sleep, food or medical attention, or threatened or abused. There is nothing to suggest that Padgett was coerced in any manner. The totality of the circumstances demonstrate that Padgett's statements were voluntary.

*Trapani*, 2003 WL 21224033, at *4-*5, slip. op. at 4-5.

"Given th[e]se facts, there is no basis in law for a conclusion that" petitioner's *Miranda* rights were violated. *Everett v. Barnett*, 162 F.3d 498, 501 (7th Cir. 1998). Because these factual findings are binding on this Court, it follows that petitioner is not entitled to habeas relief on this claim. *See, e.g.*, *Everett*, 162 F.3d at 500-01; *Bailey v. Hamby*, 744 F.2d 24, 26 (6th Cir. 1984); *Norfolk v. Houston*, 941 F. Supp. 894, 900 (D. Neb. 1995); *United States ex rel. Murray v. Gramley*, 858 F. Supp. 776, 779-80 (N.D. Ill. 1994); *cf. Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).

F.      *Right to Present a Defense (Claim III)*

Petitioner's third claim is that the exclusion of Patrick Alexander's entire criminal record as evidence of bias deprived her of her constitutional right to present a defense.

1.      *Clearly Established Law*

The right to present a complete and meaningful defense emerges from the Sixth

Amendment's Confrontation Clause and the Due Process Clause of the Fourteenth Amendment. *See Crane v. Kentucky,* 476 U.S. 683, 690(1986); *California v. Trombetta,* 467 U.S. 479, 485(1984). As the Sixth Circuit has explained:

> Rules excluding evidence "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purpose they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L.Ed.2d 413 (1998) (quoting *Rock v. Arkansas,* 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)).  The exclusion of evidence is arbitrary or disproportionate "only where it has infringed upon a weighty interest of the accused." *Id.; see Wong v. Money,* 142 F.3d 313, 325 (6th Cir.1998).

*Boggs v. Collins*, 226 F.3d 728, 743-44 (6th Cir. 2000).

As the Court of Appeals noted, evidence regarding Patrick Alexander's convictions for larceny and for uttering and publishing was admitted. Padgett established through cross-examination that Alexander only implicated Padgett when he was offered a favorable plea agreement. Any potential for bias from Alexander was fully explored and presented to the jury, and the presentation of any additional convictions would have been merely cumulative. *See United States v. Shelton*, 588 F.2d 1242, 1248(9th Cir. 1978); *United States v. Ashley*, 569 F.3d 975, 979(5th Cir. 1978); *cf. United States v. Stavroff*, 149 F.3d 478, 483(rth Cir. 1998). Accordingly, petitioner's arguement that the exclusion of the evidence infringed upon a weighty interest fails on the merits.

G. *Admission of Evidence (Claim IV)*

Petitioner's fourth claim is that the trial judge deprived her of her constitutional right to a fair trial by allowing irrelevant, prejudicial evidence that a witness' acquaintance from jail told him that he earned his spiderweb tattoo by committing a murder.

As set forth in the petition, petitioner's ex-boyfriend, Brian Miller, testified that both petitioner and Trapani had told him that Trapani wanted Gail killed so that Trapani could continue

her relationship with Gail's husband. *See* Pet., at 18. The prosecutor asked Miller about a jailhouse acquaintance named Mike Sumalka. As noted by the court of appeals, Miller told petitioner about Sumalka when asked by her "if he knew anyone who could be hired to commit murder." *Trapani*, 2003 WL 21224033, at *5. Miller mentioned Sumalka as a person who could be a hired killer because he had spider web tattoos on his elbows and, he told Miller, in order to earn the tattoos, he had to "take someone out." Pet., at 18.

Defense counsel objected to this line of inquiry, especially with regard to Sumalka's statements to Miller about earning the tattoos. The trial judge overruled the objection, on the ground that Miller's testimony regarding Sumalka's statements to him were not being offered to prove the truth of the matter asserted but only to show Miller's knowledge of Sumalka's background. On appeal, the Michigan Court of Appeals ruled that this evidence was admissible because it "was relevant to [petitioner's] intent to meet the elements of first degree murder and conspiracy." *Trapani*, 2003 WL 21224033, at *5.

    1.    *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68(1991) ("Today, we re-emphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286(6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487(6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State

12

evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223(5th Cir. 1993).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudiced that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163(8th Cir. 1999); *see Coleman v. Mitchell*, 244 F.3d 533, 542(6th Cir. 2001). Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon "whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Brown v. O'Dea*, 227 F.3d 642 (citing *Leverett v. Spears*, 877 F.2d 921 (11th Cir. 1989))(quoting *Redman v. Dugger*, 866 F.2d 387 (11th Cir. 1989)).

2.    *Analysis*

Petitioner cannot show that he was denied a fair trial by the admission of Miller's testimony regarding Sumalka's tattoos. As the court of appeals explained, this testimony was relevant to show petitioner's intent to hire someone to kill Gail, and merely reflected Miller's understanding of Sumalka's background. Petitioner essentially argues that the probative value of the evidence was outweighed by its prejudicial effect. This argument, however, provides no basis for habeas relief. "The weighing of the probative versus the prejudicial value of evidence is left to the sound discretion of the trial judge," *Bower v. Curtis*, 118 Fed. Appx. 901, 906 (6th Cir. 2004), and generally such a decision does not raise an issue of fundamental fairness cognizable under the Due Process Clause. *See Dowling v. United States*, 493 U.S. 342, 353 (1990); *Clark v. O'Dea*, 257 F.3d 498, 503 (6th Cir. 2001). Accordingly, the Court should conclude that petitioner is not entitled to relief on this claim.

H.     *Lesser Offense Instruction (Claim V)*

Petitioner's final claim is that the trial court deprived her of her state and federal constitutional rights to a properly instructed jury when the trial court denied the defense request for an instruction on solicitation of murder.

1.     *Clearly Established Law*

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial virtually unfair. *See Estelle,* 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995)(standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

2.     *Analysis*

"Is the failure to instruct on lesser included offenses in noncapital cases such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure? Experience tells us that it is not. Our view, that it is not an error of such character and magnitude to be cognizable in federal habeas corpus review, is shared by a majority of the circuits." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990)(citations omitted). Petitioner's claim is not cognizable in habeas review. In any case, the Michigan Court of

Appeals reviewed this claim and found that a solicitation instruction was not warranted under state law:

> Solicitation of murder consists of (1) the solicitor seeking to have someone killed and (2) trying to engage someone to do the killing. *People v. Sexton*, 250 Mich. App. 211, 227; 646 N.W.2d 875 (2002). Padgett does not assert that the evidence established the elements of solicitation to commit murder. The evidence fails to show that Padgett would have met the second element. While Padgett purposely sought to have the victim killed when she asked Miller to refer her to a hired killer, she did not "engage someone to do the killing." Rather, the evidence showed that Trapani revealed the plan to Ouellette. Therefore, the trial court did not err in refusing to instruct the jury on solicitation to commit murder.

*Trapani*, 2003 WL 21224033, at *6, slip. op. at 6.

Accordingly, petitioner's claim that the trial court deprived her of her state and federal constitutional rights to a properly instructed jury is without merit.

I.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will

not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                          s/Paul J. Komives
                                          PAUL J. KOMIVES
                                          UNITED STATES MAGISTRATE JUDGE

Dated: 8/17/05

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 17, 2005.
>
>                         s/Eddrey Butts
>                         Case Manager